**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 19 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

GILBERTO PEREZ DE DIOS,

      Defendant-Appellant.

No. 00-1193

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 99-CR-114-S)**

---

**Submitted on the briefs:**[*]

Normando R. Pacheco, Denver, Colorado, for Defendant-Appellant.

Thomas L. Strickland, United States Attorney and James C. Murphy, Assistant United States Attorney, for Plaintiff-Appellee.

---

Before **SEYMOUR**, **EBEL** and **BRISCOE**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case therefore is ordered submitted without oral argument.

This appeal presents two issues, one settled and the other not yet addressed in this Circuit. First, in a "reverse sting" by the police, is the defendant responsible, for the purpose of calculating drug quantity under the Guidelines, for the amount of drugs he agreed to buy from the seller-government agent, or is he responsible for only the amount of drugs actually contained in the "dummy" package? We are bound by United States Sentencing Guideline ("U.S.S.G.") §2D1.1, Application Note 12 and prior decisions of this Circuit to hold that in a reverse sting the defendant is responsible for the agreed-upon amount. Second, does a defendant's prior conviction and sentence of one year of probation for driving without proof of insurance count when computing criminal history category under U.S.S.G. § 4A1.2(c)? We have not confronted this question before, and we now hold that it does. We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and AFFIRM.

**BACKGROUND**

On March 8, 1999, defendant-appellant Gilberto Perez de Dios ("Perez de Dios") called Felipe Hernandez-Carrillo ("Hernandez-Carrillo") to arrange a drug transaction in which he would buy cocaine from Hernandez-Carrillo. Hernandez-Carrillo, recently arrested, was cooperating with the Drug Enforcement Agency ("DEA"). Using Hernandez-Carrillo as a seller, the DEA set up Perez de Dios for

a "reverse sting" – i.e., a transaction where the government arranges for the defendant to purchase (what he believes to be) drugs from an undercover government agent.

Later that day and the next, the two men spoke to each other – using partially coded language – several more times to establish the time and place to conduct the transaction. During one of these telephone conversations, Perez de Dios asked Hernandez-Carrillo how much one kilogram of cocaine would cost, and Hernandez-Carrillo told him $22,000. They agreed to meet on March 9, 1999, at a car wash in Carbondale, Colorado. When they met, Perez de Dios asked for the cocaine. Hernandez-Carrillo showed him a package wrapped in black electrical tape which the DEA had provided.[1] Perez de Dios objected that it felt too little, but Hernandez-Carrillo assured him that it was "more than half a kilo" and was "really good." Perez de Dios took possession of the package. Perez de Dios stipulated in his Plea Agreement that he went to the car wash with the intention of receiving cocaine from Hernandez-Carrillo and that he intended to later distribute some of that cocaine.

On January 20, 2000, Perez de Dios pled guilty to one count of possession with intent to distribute and attempted possession with intent to distribute

---

[1]It is undisputed that the DEA provided Hernandez-Carrillo with this "dummy" package that actually contained only two ounces of cocaine.

cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846. In the Plea Agreement, Perez de Dios and the government acknowledged that there was no agreement as to the amount of cocaine involved in the March 9, 1999, drug transaction between Perez de Dios and Hernandez-Carrillo. The parties agreed that the court at sentencing would determine the amount of cocaine for which Perez de Dios would be held responsible.

At the sentencing hearing on May 4, 2000, the court adopted the factual findings and Guidelines application of the U.S. Probation Office in its presentence investigative report. The court found that Perez de Dios and Hernandez-Carrillo had agreed that Perez de Dios would buy one kilogram of cocaine from Hernandez-Carrillo at the car wash. Further, the court determined that Perez de Dios' prior conviction for failure to provide proof of insurance,[2] in violation of Colo. Rev. Stat. § 42-4-1409, would count in his criminal history score, giving him a criminal history category of II. The court sentenced Perez de Dios to the statutory minimum of sixty months. Perez de Dios filed this appeal on May 8, 2000.

---

[2]Perez de Dios pled guilty to this misdemeanor traffic violation on August 4, 1995. He was sentenced to one year of probation, fifty hours of community service, and $160 in court costs and fines. The fact that he was sentenced to one year of probation is significant to Part B of the Discussion, below.

## DISCUSSION

Perez de Dios contends that the district court erred when it (1) held him responsible under the Guidelines for one kilogram of cocaine, when the "dummy" package in the reverse sting operation contained only two ounces (.062 kilograms) and (2) included his prior misdemeanor conviction and sentence of one year probation for driving without proof of insurance in its computations to determine his criminal history category under the Guidelines. We find that the district court properly sentenced Perez de Dios, so we AFFIRM.

A. Drug Quantity in a 'Reverse Sting'

"A sentencing court's factual findings on the quantities of drugs attributable to a defendant are reviewed for clear error, while legal issues are reviewed de novo." United States v. Hardwell, 80 F.3d 1471, 1497 (10th Cir. 1996).

> Application Note 12 for U.S.S.G. § 2D1.1 provides,
>
> In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense. . . In contrast, in a reverse sting, the agreed-upon quantity of the controlled substance would more accurately reflect the scale of the offense because the amount actually delivered is controlled by the government, not by the defendant.

(Emphasis added). A reverse sting is precisely what happened in this case: The DEA engaged Hernandez-Carrillo to make a controlled sale to Perez de Dios; it

provided a "dummy" package meant to simulate one kilogram of cocaine with which Hernandez-Carrillo conducted the deal with Perez de Dios. Thus, Application Note 12 controls, and Perez de Dios is held responsible for the quantity of cocaine that he agreed to purchase. See United States v. Bara, 13 F.3d 1418, 1420 (10th Cir. 1994). The quantity Perez de Dios agreed to purchase is a fact question reviewed for clear error. See Hardwell, 80 F.3d at 1497.

Perez de Dios stipulated to his intent to obtain cocaine from Hernandez-Carrillo at the car wash. He contends, however, that he could not have agreed to purchase one kilogram of cocaine, at a price of $22,000, for he had no money on him at the time of the transaction. At the sentencing hearing, Hernandez-Carrillo testified that he did not expect to be paid by Perez de Dios at the car wash that day because Perez de Dios was already a client and "that's how I worked." In other words, Hernandez-Carrillo permitted certain clients, like Perez de Dios, to buy cocaine on credit.

In United States v. Hardwell, 80 F.3d 1471 (10th Cir. 1996), this court confronted a similar situation, in which the defendants disputed the amount of drugs properly attributed to them based on their lack of ability to pay for them at the time of the transaction. See id. at 1497-98. This court rejected the defense on the grounds that, first, the government had proven that the defendants had the intent to acquire the drugs and, second, evidence supported "an inference that

defendants intended to obtain the drugs [at the time of the relevant transaction] and worry about paying for them later." Id. at 1498. This court noted, "A drug buyer who lacks the full purchase price may nonetheless intend to obtain the negotiated quantity by force or deception, or on a credit or consignment basis." Id. at 1497; see also id. at 1498 ("'Fronting,' or supplying drugs on consignment or on credit, is a known practice among drug dealers.").

In this case, Perez de Dios stipulated that he intended to acquire the drugs at the transaction with Hernandez-Carrillo, and he has produced no evidence to counter Hernandez-Carrillo's testimony that Hernandez-Carrillo was (or, more appropriately, appeared to be) "fronting" the drugs to Perez de Dios. Thus, we conclude that the court did not commit clear error by finding that Perez de Dios had agreed to purchase one kilogram of cocaine from Hernandez-Carrillo.[3]

_____

[3]While the sentencing court found that "the testimony . . . clearly indicate[d] that the transaction [between Perez de Dios and Hernandez-Carrillo] contemplated the delivery of one kilogram of cocaine," Tr. at 81, our review of the testimony leaves us less certain as to whether the government had sufficiently demonstrated how much they had agreed upon. We remain confident of the result, however, for two reasons. First, and most important, the evidence supports a factual finding that Perez de Dios intended to buy at least 500 grams of cocaine, and, as the sentencing court noted, the base offense level under Guideline § 2D1.1(7) is the same for all quantities of cocaine between 500 grams and 2 kilograms. See United States v. Humphrey, 208 F.3d 1190, 1209 (10th Cir. 2000) (finding offense level proper so long as government has established quantity of drugs within § 2D1.1 range). Second, Perez de Dios did not raise the issue of whether the government had adequately demonstrated that the agreed-upon amount was one kilogram. See Hein v. TechAmerica Group, Inc., 17 F.3d 1278, 1279 (10th Cir. 1994) (stating that where the district court's findings are not expressly appealed, this court will accept them

(continued...)

B. <u>Driving Without Proof of Insurance</u>

Perez de Dios argues to us, as he did to the district court below, that his misdemeanor conviction for driving without proof of insurance should not be counted when calculating his criminal history category under the Sentencing Guidelines. He contends that this prior conviction is similar to a minor traffic infraction, like speeding, and thus should be excluded under U.S.S.G. §4A1.2(c)(2). The district court disagreed, finding that it was not similar to minor traffic infractions and that it should be counted under § 4A1.2(c)(1). "We review the district court's interpretation and application of the [G]uidelines de novo." <u>United States v. Hooks</u>, 65 F.3d 850, 854 (10th Cir. 1995).

> To calculate a defendant's criminal history category, a district court assigns a defendant criminal history points for each of his prior sentences of imprisonment and adds the points together. The total of the criminal history points determines the defendant's criminal history category.

<u>Id.</u> at 855 (citing U.S.S.G. § 4A1.1 & accompanying commentary; U.S.S.G. Ch.5 Pt. A, Sentencing Table). Since the language of § 4A1.2(c) is important, we quote it in full:

> **(c) Sentences Counted and Excluded**: Sentences for all felony offenses are counted. Sentences for misdemeanor and petty offenses are counted except as follows:

---

[3](...continued)
as undisputed).

(1) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of at least one year or a term of imprisonment for at least thirty days, or (B) the prior offense was similar to an instant offense:

Careless or reckless driving
Contempt of court
Disorderly conduct or disturbing the peace
Driving without a license or with a revoked or suspended license
False information to a police officer
Fish and game violations
Gambling
Hindering or failing to obey a police officer
Insufficient funds check
Leaving the scene of an accident
Local ordinance violations (excluding local ordinance violations that are also criminal offenses under state law)
Non-support
Prostitution
Resisting arrest
Trespassing.

(2) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted:

Hitchhiking
Juvenile status offenses and truancy
Loitering
Minor traffic infractions (e.g., speeding)
Public intoxication
Vagrancy.

U.S.S.G. § 4A1.2(c)(1), (2).

Thus, as a general rule, misdemeanor convictions are counted. See U.S.S.G. § 4A1.2(c) (introductory language).  Sub-sections (c)(1) and (c)(2) exclude certain misdemeanors from this calculation.  A prior conviction is not counted

under (c)(1) if the prior conviction is listed under (c)(1) or is similar to an offense listed under (c)(1), and the sentence was less than a term of probation of one year or a term of imprisonment for thirty days, and the prior conviction is not similar to the current offense. A prior conviction is not counted under (c)(2) if it is listed thereunder or if it is similar to a listed offense under (c)(2).

The policy considerations underlying this section of the Guidelines are apparent. The Commission concluded that the listed offenses under (c)(2) are of such minor significance relative to the goals of sentencing that they are never counted, regardless of the degree of punishment imposed or the similarity between the prior and current offense. See United States v. Hardeman, 933 F.2d 278, 281 (5th Cir. 1991) ("[T]he purpose of this section of the Guidelines [is] to screen out past conduct which is of such minor significance that it is not relevant to the goals of sentencing."). In contrast, the Commission decided that the offenses listed under (c)(1) may indicate defendant deserves greater punishment or is likely to repeat criminal behavior, see "Introductory Commentary" to U.S.S.G. Chapter Four, Part A "Criminal History," depending on whether defendant's prior conviction received a significant sentence or was similar to an instant offense.

1. <u>The Meaning of "Similar" in § 4A1.2(c)</u>

Much of our analysis in this case turns on the meaning of "similar" for purposes of U.S.S.G. § 4A1.2(c).[4] We believe the phrase "by whatever name they are known" in sub-section (c)(1) and (c)(2) directs a court to examine the substance of the compared offenses when deciding whether they are "similar."[5] That is, the Commission was instructing courts not to place undue emphasis on nomenclature but instead to examine whether the underlying behavior necessary to commit the prior misdemeanor shares the same general characteristics as the behavior required to commit an offense expressly listed under (c)(1) or (c)(2).

This court, in its three published decisions involving this issue, has intuitively and without discussion looked to the essential characteristics of the underlying conduct when comparing offenses under § 4A1.2(c). In <u>United States v. Cox</u>, 934 F.2d 1114, 1124 (10th Cir. 1991), we concluded that a prior misdemeanor conviction for menacing was not similar to a minor traffic infraction or disorderly conduct. We wrote, "Menacing is a crime against the person . . . and disorderly conduct is a crime against the public peace, order, and decency."

---

[4]We want to make clear that the following discussion of "similar" applies only in the context of interpreting it for U.S.S.G. § 4A1.2(c). We express no opinion here on how "similar" should be interpreted in other circumstances, either within the Guidelines or more broadly.

[5]We read the "they" in "by whatever name they are known" as applying across the conjunction "and" to both "prior offenses" and "offenses similar to them."

- 11 -

Id. We cited the two relevant Colorado statutes and abstracted from the statutes' elements to distinguish them by their essential characteristics. Similarly, in United States v. Norman, 129 F.3d 1393, 1400-01 (10th Cir. 1997), this court found a prior conviction for "harassment" was not similar to "disorderly conduct" or "disturbing the peace" for purposes of § 4A1.2(c). The Norman panel quoted the language of the municipal ordinance prohibiting harassment to emphasize that it was directed at punishing actions taken against a specific person. "Disorderly conduct" and "disturbing the peace," in contrast, are crimes against public peace, order, and decency. Again, this court based its conclusion that the prior conviction was not similar to the listed offenses by examining the essential characteristics of each. Finally, in United States v. Hooks, 65 F.3d 850, 854-56 (10th Cir. 1995), we made the obvious distinction between the prior conviction of "larceny of merchandise" and the instant offense of possession with intent to distribute cocaine.[6]

A cursory examination of how other circuits treat this question reveals several different approaches. The Second, Fifth, and Seventh Circuits all use some sort of multi-factor test, the most popular being from the Fifth Circuit case

---

[6]We note for the sake of completeness that the Hooks court found the prior larceny conviction counted towards defendant's criminal history category even though it was a "local ordinance violation" because it also constituted a criminal offense under Oklahoma state law. See Hooks, 65 F.3d at 855-56.

United States v. Hardeman, 933 F.2d 278, 281 (5th Cir. 1991) (considering "[1] a comparison of punishments imposed for the listed and unlisted offenses, [2] the perceived seriousness of the offense as indicated by the level of punishment, [3] the elements of the offense, [4] the level of culpability involved, and [5] the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct"). See also United States v. Martinez-Santos, 184 F.3d 196, 205-06 (2d Cir. 1999); United States v. Booker, 71 F.3d 685, 689-90 (7th Cir. 1995). Though consideration of all or some of the listed factors may, in given cases, be helpful, a formulaic approach seems to us unnecessary. Such multi-factor tests have been criticized for indeterminacy.[7] See United States v. Harris, 128 F.3d 850, 854-55 (4th Cir. 1997) (discussing how some of the Hardeman factors may lead to uncertainty or confusion).

The First, Third, and Fourth Circuits utilize an "elements approach" – a slightly narrower inquiry than what we adopt today – which compares the legal

_____

[7]Besides utilizing factors that may lead to inconsistent or indeterminate results, the Hardeman multi-factor test is also somewhat redundant. Two of its factors are "punishments imposed for the listed and unlisted offenses" and "perceived seriousness of the offense as indicated by the level of punishment." Hardeman, 933 F.2d at 281. To the extent that either of these factors directs a court to consider the punishment actually received by the defendant for the prior conviction, it duplicates part of the Commission's framework under § 4A1.2(c). Sub-section (c)(1) already incorporates this concern by including "a threshold requirement that a prior misdemeanor sentence may be excluded only if the term of the punishment was less than thirty days imprisonment or one year probation." United States v. Harris, 128 F.3d 850, 855 (4th Cir. 1997).

- 13 -

elements of the prior and current offenses. See United States v. Unger, 915 F.2d 759, 763 (1st Cir. 1990) ("We believe that, to ascertain the scope of section 4A1.2(c)(2), we should look to the substance of the underlying state offense in order to determine whether it falls within the proscription."); United States v. Elmore, 108 F.3d 23, 27 (3d Cir. 1997); United States v. Harris, 128 F.3d 850, 854-55 (4th Cir. 1997). While the elements approach resembles the essential characteristics approach, we find that the key terms of § 4A1.2(c) – "similar" and "by whatever name they are known" – give courts more latitude than merely comparing legal elements of offenses.

We note with approval that the Eighth Circuit has held that "similar" is to be given its "normal" or dictionary meaning – "[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness." United States v. Mitchell, 941 F.2d 690, 691 (8th Cir. 1991) (quoting Webster's New International Dictionary (2d ed. 1934)); see also United States v. Harris, 128 F.3d 850, 854 (4th Cir. 1997) ("[W]hen two offenses are similar, their essential elements are 'nearly corresponding' or 'resembling in many respects.'"). The Eleventh Circuit has also applied the "similar" criterion in §4A1.2(c) by comparing the general or essential characteristics of the two offenses at issue. See United States v. Wilson, 927 F.2d 1188, 1189-90 (11th Cir. 1991) (concluding that military AWOL is similar to contempt of court and hindering or failing to

- 14 -

obey a police officer because "[t]hese offenses similarly involve a disregard for lawful authority").

2. Application

Applying this essential-characteristics-of-the-crime comparison, we easily conclude that the district court properly included Perez de Dios' previous misdemeanor conviction for driving without proof of insurance in the criminal history calculation. Since he received a sentence of a year of probation for his prior conviction, he does not qualify for the exclusion under (c)(1). Thus, we need not analyze whether driving without proof of insurance is similar to an offense listed under (c)(1), e.g., driving without a license or with a revoked or suspended license.

As for the (c)(2) exclusion, his prior misdemeanor was for driving without proof of insurance; minor traffic infractions, like speeding, however, are committed by actually operating one's car in a prohibited manner. The superficial similarity that both offenses involve driving a car is overshadowed by the significant difference that the former is concerned not with actually operating an automobile, as is the latter, but with failing to abide by regulations designed to assure that unsafe drivers are not on the road at all. See United States v. Boyd, 146 F.3d 499, 502 (7th Cir. 1998) ("The license and insurance requirements are both prerequisites to driving, and both serve the same purpose: to control the

- 15 -

number of high risk drivers on the highways."). Thus, Perez de Dios is not entitled to the exclusion under (c)(2).

Therefore, we conclude that the district court did not err by including this prior conviction in the calculation of Perez de Dios' criminal history category.

## CONCLUSION

The district court properly began Perez de Dios' sentence calculation from a base offense level of 26 under U.S.S.G. § 2D1.1. The court also properly included Perez de Dios' prior misdemeanor conviction of driving without proof of insurance in the calculation of his criminal history category for purposes of U.S.S.G. §4A1.2(c). Consequently, we AFFIRM the district court's order.