**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 8 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 02-2119

GABRIEL MENDEZ-LOPEZ,

Defendant-Appellant.

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-01-1043-BB)

Norman Cairns, Assistant United States Attorney, (David C. Iglesias, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

Howard A. Pincus, Assistant Federal Public Defender, (Michael G. Katz, Federal Public Defender, with him on the brief), Denver, Colorado, for Defendant-Appellant.

Before **EBEL**, **McWILLIAMS**, and **MURPHY**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Defendant Gabriel Mendez-Lopez was charged with possession with intent to distribute at least fifty kilograms of marijuana that he had allegedly secreted in the gas tank of a vehicle, in violation of 21 U.S.C. § 841(b)(1)(C). After a jury trial, Mendez-Lopez was convicted and sentenced to 46 months' imprisonment. Mendez-Lopez appeals his conviction, arguing that he was deprived of his Article III right to a federal district judge when a magistrate judge presided over jury deliberations and responded to a question from the jury. Mendez-Lopez also appeals his sentence, arguing that the district court plainly erred in calculating his criminal history category. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms**, concluding that the magistrate judge was authorized to answer the jury's question with a stipulated response and the calculation of Mendez-Lopez's criminal history category was not plainly erroneous.

## II. BACKGROUND[1]

Prior to instructing the jury, the district court obtained the consent of the defense counsel to delegate to a magistrate judge the taking of the verdict. Specifically, the district court stated:

---

[1] Mendez-Lopez's unopposed motion to supplement the record with the note from the deliberating jury and the transcript of the proceedings regarding the jury note is **granted**.

The other thing I wanted to get on the record, if you will consent, my staff and I would like to leave when the jury begins to deliberate and permit Judge Smith to take the verdict. Is that acceptable with you [counsel]?

Mendez-Lopez was present in court when the district judge explained that he would not be present when the jury deliberated and that a magistrate judge would take the verdict. Also, in the presence of Mendez-Lopez, the district court instructed the jury as follows:

I'm reminded by counsel that I made arrangements with Magistrate Judge Smith, who's a resident here in Las Cruces and who is conducting a court hearing here today, to take the verdict for me because I'm going back to Albuquerque, and so is my staff. So they're going to take – he's going to take the verdict. But he can get me on my phone at any time while I'm in transit to Albuquerque. So if there's anything that I need to be consulted about, he can do that. And counsel have been advised of this and have agreed to it.

Mendez-Lopez did not object to the absence of the district judge during jury deliberations nor to the delegation of judicial authority to the magistrate judge.

During deliberations, the jury sent a note to the magistrate judge asking, "Who is Victor Flores[?] Transportation employee? Previous employee? Previous owner? Exhibit #3 under TAC name!" The magistrate judge convened an off-record conference in his chambers with counsel for the defense and the government. At the end of the conference, the magistrate judge went on the record and stated the following in the presence of counsel for the defense and the government:

All right.  Counsel.  I understand that Counsel had stipulated to me sending in the following note: (Reading) Ladies and gentlemen, in response to your note on Exhibit 3, you have heard the evidence; you must rely upon your individual memories of the evidence and be guided by the instructions of the Court, signed, Judge Smith.  Do both sides stipulate to that note in response to the note sent out by the jury with regard to Exhibit 3 and agree that it should be sent in?

Defense counsel responded by saying, "On behalf of Mr. Mendez-Lopez, Judge, I do."  The magistrate judge sent the note into the jury room.  The jury later returned a guilty verdict.

In sentencing Mendez-Lopez, the district court adopted the factual findings and guideline applications contained in the presentence report ("PSR").  Without objection, Mendez-Lopez was assigned one criminal history point for a misdemeanor conviction of fleeing and eluding a police officer.  Because he also had one point for another misdemeanor conviction, Mendez-Lopez was sentenced in criminal history category II.  Mendez-Lopez's adjusted offense level was determined to be 22.  Therefore, the guideline range provided for a sentence of 46-57 months.  The district judge sentenced Mendez-Lopez to 46 months' imprisonment.

## III.  DISCUSSION

*A.  The magistrate judge's authority*

Mendez-Lopez argues that he was deprived of his right to a judicial officer under Article III of the Constitution because the magistrate judge was not

authorized to answer the question from the jury during deliberations. Mendez-Lopez did not raise an objection to the delegation of judicial authority to the magistrate judge to take the verdict from the deliberating jury nor to the magistrate judge's handling of the jury question. Therefore, this court reviews the delegation of judicial authority to the magistrate judge for plain error[2]. *United States v. Ciapponi*, 77 F.3d 1247, 1249 (10th Cir. 1996). However, "[b]ecause [the] defendant raises a potential constitutional error, we apply the plain error rule less rigidly." *Id*. at 1250. (quotation omitted).

By enacting the Federal Magistrates Act, 28 U.S.C. §§ 631–639, "Congress intended magistrates to play an integral and important role in the federal judicial system." *Peretz v. United States*, 501 U.S. 923, 928 (1991). In addition to expressly authorized tasks, the Federal Magistrates Act authorizes a federal district court judge to "assign[] [a magistrate judge to] such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3).

---

[2] Mendez-Lopez argues that this court should review the delegation of authority to the magistrate judge *de novo* because he was not physically present when the magistrate judge answered the question from the jury and was unable to object. Mendez-Lopez, however, was present when the district court delegated judicial authority to the magistrate judge. As discussed *infra*, this court holds that Mendez-Lopez consented to the actions of the magistrate judge in this case. Therefore, because Mendez-Lopez failed to object to the delegation of judicial authority to the magistrate judge, this court reviews such delegation for plain error. *United States v. Ciapponi*, 77 F.3d 1247, 1249 (10th Cir. 1996).

The Supreme Court first addressed the issue of what constituted an "additional duty" under the Federal Magistrates Act in *Gomez v. United States*, 490 U.S. 858 (1989). In *Gomez*, the Supreme Court determined that presiding over *voir dire* in a felony trial without the defendant's consent is not among those "additional duties" to which a magistrate judge can be assigned. *Id*. at 860, 875-76. The *Gomez* Court reasoned that presiding over *voir dire* in a felony trial was not similar to the specified duties of a magistrate judge under the Federal Magistrates Act. *Id*. at 871-72. Further, the *Gomez* Court noted that *voir dire* was a critical stage of the criminal proceeding. *Id*. at 873. Finally, the *Gomez* Court reasoned,

> [a]mong those basic fair trial rights that can never be treated as harmless is a defendant's right to an impartial adjudicator, be it judge or jury. Equally basic is a defendant's right to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside. Thus harmless-error analysis does not apply in a felony case in which, despite the defendant's objection and without any meaningful review by a district judge, an officer exceeds his jurisdiction by selecting a jury.

*Id.* at 876 (internal citation and quotations omitted).

The Supreme Court again examined the meaning of the "additional duties" clause in *Peretz*. Unlike the defendants in *Gomez*, the defendants in *Peretz* consented to the delegation of judicial authority to the magistrate judge to

conduct *voir dire* in their felony trial.[3]  *Peretz*, 501 U.S. at 925, 927-28.  The

*Peretz* Court explained that the "holding in *Gomez* was narrow" and distinguished

*Gomez* on the basis that "petitioner's counsel, rather than objecting to the

Magistrate's role, affirmatively welcomed it." *Id*. at 927, 932.  The *Peretz* Court

reasoned that "the defendant's consent significantly changes the constitutional

analysis" because it "eliminates [the] concern that a general authorization [*i.e.*,

the "additional duties" clause] should not lightly be read to deprive a defendant of

any important privilege." *Id*. at 932.  Further, the *Peretz* Court explained,

> [o]f course, we would still be reluctant, as we were in *Gomez*, to
> construe the additional duties clause to include responsibilities of far
> greater importance than the specified duties assigned to magistrates.
> But the litigants' consent makes the crucial difference on this score
> as well.  As we explained . . . the duties that a magistrate may
> perform over the parties' objections are generally subsidiary matters
> not comparable to supervision of jury selection.  However, with the
> parties' consent, a district judge may delegate to a magistrate
> supervision of entire civil and misdemeanor trials.  These duties are
> comparable in responsibility and importance to presiding over *voir
> dire* at a felony trial.

*Id*. at 933.

Interpreting *Peretz*, this court held in *Ciapponi*, that analysis of a

defendant's challenge to the authority of a magistrate judge requires two inquiries

---

[3]  The *Peretz* Court explained that "[i]mmediately before the jury selection
commenced, the Magistrate asked for, and received, assurances from counsel for
petitioner and from counsel for his codefendant that she had their clients' consent
to proceed with the jury selection." *Peretz v. United States*, 501 U.S. 923, 925
(1991) (footnote omitted).

– one statutory and one constitutional. 77 F.3d at 1250. The determination of whether the defendant consented to the delegation of judicial authority to the magistrate judge is critical to both inquiries. *Id.* Under the statutory inquiry, the reviewing court must determine whether the task at issue falls within the "additional duties" clause, *i.e.*, does the task "bear[] some reasonable relation to the specified duties which may be assigned to magistrate judges under the Federal Magistrates Act." *Id.* (footnote omitted). Under the constitutional inquiry, the court must determine whether, even if the task is authorized, it "impinges [on the] criminal defendant's constitutional right under Article III to have a district judge preside at all critical stages of a felony trial," *i.e.*, whether the defendant has "consent[ed] to proceed before a magistrate judge . . . because no constitutional right is implicated if the defendant does not object to the absence of an Article III judge." *Id.*

Mendez-Lopez concedes that a defendant implicitly consents to the magistrate judge's authority if the defendant is present when the district court judge delegates judicial authority and fails to object. *See Peretz*, 501 U.S. at 933 (citing favorably the decisions of the Second, Third, and Seventh Circuits which held that the decision in *Gomez* did not apply when a defendant failed to object to the magistrate judge's exercise of delegated authority). While Mendez-Lopez failed to object to the district court's delegation of judicial authority to the

magistrate judge, he argues that the district court only delegated judicial authority to the magistrate judge to take the verdict. Therefore, Mendez-Lopez contends, his consent was limited.[4]

In addition to specifically delegating judicial authority to the magistrate judge to take the verdict, the district court judge also explained that the magistrate judge could contact him via telephone while he was in transit "if there's anything that [he] need[ed] to be consulted about." Further, in the presence of Mendez-Lopez, the district court judge explained that counsel had been advised of and agreed to this arrangement. Therefore, Mendez-Lopez consented to the magistrate judge's handling of the deliberating jury unless a need arose to consult the district judge.

In this case, the magistrate judge responded to the jury's question by providing an answer stipulated to by both the defense and the government. There is no indication in the record that either the defense or the government requested consultation with the district court judge. Moreover, as there was no testimony given regarding the exhibit that was the subject of the jury's question, the defense

---

[4] Mendez-Lopez also argues that while his counsel specifically consented to the magistrate judge's authority to answer the question from the jury, this consent is insufficient under *Peretz*. Because this court concludes, as discussed below, that Mendez-Lopez's implicit consent encompassed the magistrate judge's actions, we need not reach the issue of whether defense counsel's consent is sufficient under *Peretz*.

does not assert there was any other answer to the jury's question. Given the scope of the delegation of authority and the actions actually taken by the magistrate judge, Mendez-Lopez consented to the magistrate judge's authority in this case.

This court must next determine whether responding to a jury question with the consent of the parties is similar to the duties explicitly assigned to magistrate judges under the Federal Magistrates Act. *Ciapponi*, 77 F.3d at 1250. Under *Peretz*, even tasks that are consented to by the parties must *not* be of "far greater importance than the specified duties assigned to magistrates." 501 U.S. at 933. Answering a jury question with a response stipulated to by both parties is not of far greater importance or responsibility than handling a civil or misdemeanor trial, tasks to which a magistrate judge may be delegated with the consent of the parties. 28 U.S.C. § 636(c)(1); 18 U.S.C. § 3401(b); *see Peretz*, 501 U.S. at 933 (explaining that presiding over *voir dire* at a felony trial is comparable in responsibility and importance to presiding over a civil and misdemeanor trial). Therefore, the magistrate judge was authorized under the "additional duties" provision of the Federal Magistrates Act to respond to the jury question with the consent of the parties.

Finally, this court must address the constitutional inquiry, *i.e.* whether, even though authorized, the magistrate's conduct violated Mendez-Lopez's

Article III rights. *Ciapponi*, 77 F.3d at 1250. Like the defendant in *Peretz*, Mendez-Lopez failed to object to the deprivation of his Article III rights.[5] These rights are, therefore, waived. *Peretz*, 501 U.S. at 936-37 (holding that "a defendant has no constitutional right to have an Article III judge preside at jury selection if the defendant has raised no objection to the judge's absence").

Accordingly, the district court did not err in delegating judicial authority to the magistrate judge, with Mendez-Lopez's consent, to answer the jury's question with a stipulated response. Moreover, such delegation did not violate Article III.

*B. Calculation of Mendez-Lopez's criminal history category*

Mendez-Lopez argues that the district court erred in calculating his criminal history category by assigning him a criminal history point for his prior misdemeanor conviction for fleeing or eluding a police officer. Because Mendez-Lopez failed to object to the calculation of his criminal history category below, this court reviews the district court's sentencing determination for plain error. *United States v. Battle*, 289 F.3d 661, 669 (10th Cir. 2002). Under the plain error

---

[5]In a footnote in his brief, Mendez-Lopez argues that although the *Peretz* Court concluded consent to the magistrate's authority waives the defendant's constitutional rights under Article III, Mendez-Lopez could not waive his Article III rights by consent *in this case*. Specifically, he argues that Article III contains structural protections which cannot be waived, and the procedure in this case would violate these structural protections. Mendez-Lopez, however, fails to articulate these structural protections or explain how permitting the magistrate judge to respond to a jury question with a stipulated answer would violate such protections.

standard, this court reviews the district court's sentencing determination "for particularly egregious or obvious and substantial legal error, which our failure to consider would result in a miscarriage of justice." *United States v. Lowder*, 5 F.3d 467, 472 (10th Cir. 1993) (quotations omitted). The dissent reasons that "application of an incorrect sentencing range would constitute plain error, and merits reversal and remand for resentencing." While an error in sentencing may affect the substantial rights of the defendant, reversal is not appropriate under a plain error review unless the error was "clear and obvious." *United States v. Whitney*, 229 F.3d 1296, 1308-09 (10th Cir. 2000) (holding that the sentencing error did not rise to plain error, reasoning that "[a]lthough, we have held that 'basing a sentence on the wrong guideline range constitutes a fundamental error affecting substantial rights within the meaning of Rule 52(b),' thereby satisfying the third prong of the plain error inquiry, [the defendant] cannot establish the second requirement, that, if there was error, it was plain").

Under U.S.S.G. § 4A1.2(c)(1), misdemeanor offenses are counted in calculating criminal history except when the offense is similar to a listed offense,[6]

---

[6] The listed offenses in U.S.S.G. § 4A1.2(c)(1) includes: "Careless or reckless driving"; "Contempt of court"; "Disorderly conduct or disturbing the peace"; "Driving without a license or with a revoked or suspended license"; "False information to a police officer"; "Fish and game violations"; "Gambling"; "Hindering or failure to obey a police officer"; "Insufficient funds check"; "Leaving the scene of an accident"; "Local ordinance violations (excluding local ordinance violations that are also criminal offenses under state law)"; "Non-

-12-

unless the defendant was sentenced to a term of probation of at least one year or a term of imprisonment of at least thirty days, or the prior offense was similar to the instant offense. *United States v. Perez De Dios*, 237 F.3d 1192, 1196-97 (10th Cir. 2001). Mendez-Lopez argues that the offense of fleeing or eluding police is similar to hindering or failing to obey a police officer and resisting arrest, two offenses listed in § 4A1.2(c)(1).

An offense is "similar" to a listed offense if the offenses have the same essential characteristics. *Perez De Dios*, 237 F.3d at 1198-99 (applying the "essential-characteristics-of-the-crime comparison" and noting with approval the approach taken by the United States Court of Appeals for the Eighth Circuit in defining "similar" as "'[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness.'" (citation omitted)). Under Kansas law, the offense of fleeing or eluding a police officer is defined as:

> Any driver of a motor vehicle who willfully fails or refuses to bring such driver's vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle or police bicycle, when given visual or audible signal to bring the vehicle to a stop . . . .

Kan. Stat. Ann. § 8-1568(a). Failing to comply with a police officer's order and resisting arrest, however, are prohibited under separate provisions of Kansas law. Kan. Stat. Ann. § 8-1503 (designating as a misdemeanor the "willful[] fail[ure] or

---

support"; "Prostitution"; "Resisting arrest"; "Trespassing."

-13-

refus[al] to comply with any lawful order or direction of any police officer");

Kan. Stat. Ann. § 21-3217 (stating "[a] person is not authorized to use force to

resist an arrest which he knows is being made . . . by a law enforcement officer").

Although this court recognizes that the proper question before the court is

whether the crime for which Mendez-Lopez was convicted is "similar" to those

offenses listed in U.S.S.G. § 4A1.2(c)(1), the separate treatment given to

hindering or failing to obey a police officer and resisting arrest under Kansas law

suggests that fleeing or eluding a police officer is not a "similar" offense.

Further, Mendez-Lopez concedes that the offense of fleeing or eluding the

police, unlike the offenses of hindering or failing to obey a police officer and

resisting arrest, requires the use of a motor vehicle. While the dissent argues that

this court should not "parse the elements of the crimes," the distinction between

an offense which involves a motor vehicle and one which does not is significant.

Committing an offense while in a motor vehicle inherently increases the potential

threat to public safety. The distinction between the threat sought to be deterred

by criminalizing fleeing or eluding police and that sought to be deterred by

criminalizing hindering or failing to obey a police officer and resisting arrest

further supports the conclusion that these offenses are not "similar."[7]

---

[7] Mendez-Lopez was convicted of three separate offenses, *i.e.*, fleeing or eluding the police; speeding; and not possessing a driver's license. While the dissent argues that Mendez-Lopez's conviction for speeding is similar to the

-14-

Even assuming that the offense of fleeing or eluding police is arguably "similar" to the offenses listed in § 4A1.2(c)(1), such similarity is not "obvious" and the district court's failure to recognize such similarity is not "particularly egregious." *See Lowder*, 5 F.3d at 472 (quotation omitted); *Whitney*, 229 F.3d at 1308-09. Employing a per se plain error test, the dissent concludes that the erroneous calculation of Mendez-Lopez's criminal history score is plain error simply because it changed Mendez-Lopez's sentencing range. Such an approach is contrary to clearly settled circuit precedent. *Whitney*, 229 F.3d at 1308-09 (holding that an error which affects a defendant's substantial rights must be *clear and obvious* to constitute plain error). Therefore, the district court did not plainly err in assessing Mendez-Lopez a criminal history point for his prior misdemeanor conviction.

## V. CONCLUSION

For the foregoing reasons, this court **affirms** Mendez-Lopez's conviction and sentence.

---

listed offense of "Minor traffic infractions (e.g. speeding)" and his conviction for not possessing a driver's license is similar to "Driving without a License or with a revoked or suspended license," we need not consider these convictions in light of our conclusion that the offense of fleeing and eluding is not "similar" to the listed offenses in U.S.S.G. § 4A1.2(c).

02-2119, <u>United States v. Mendez-Lopez</u>
**EBEL, Circuit Judge, dissenting**

In my view, Mendez-Lopez's prior three-count conviction for "Fleeing and Eluding, Speeding, and Not Possessing a Driver's License" is similar to crimes that should have been excluded from a defendant's criminal history score pursuant to U.S.S.G. § 4A1.2(c). This change would affect Mendez-Lopez's appropriate sentencing range, and merit reversal and remand for resentencing under our case law. I therefore respectfully dissent.

Under U.S.S.G. § 4A1.2(c), certain sentences for misdemeanor and petty offenses are not counted toward a defendant's criminal history score if they are "similar" to any crimes on a list given in the guideline, except that they may be counted if the defendant received a term of probation of at least a year (or a term of imprisonment of at least thirty days) for the crime or if the prior offense is similar to the instant offense for which he is being convicted.[1] U.S.S.G.

---

[1] The text of U.S.S.G. § 4A1.2(c) reads:

(c) Sentences Counted and Excluded

Sentences for all felony offenses are counted. Sentences for misdemeanor and petty offenses are counted, except as follows:

(1) Sentences for [a] following [list of] prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense

(continued...)

§ 4A1.2(c).  Under our case law, district court application of an incorrect sentencing range would constitute plain error, and merit reversal and remand for resentencing.  United States v. Smith, 919 F.2d 123, 124 (10th Cir. 1990); United States v. Occhipinti, 998 F.2d 791, 801 - 02 (10th Cir. 1993).

In his March 1996 conviction for "Fleeing and Eluding, Speeding, and Not Possessing a Driver's License," Mendez-Lopez did not receive a term of probation of at least a year, a term of imprisonment of at least thirty days, nor is there any argument that these offenses were similar to his instant conviction for drug trafficking.[2]  The question thus joined is whether the three counts of his previous conviction were "similar" to crimes on the list provided in U.S.S.G. § 4A1.2(c).[3]

---

[1](...continued)
was similar to an instant offense.

[2]  For Count I of the March 1996 conviction ("Fleeing and Eluding"), Mendez-Lopez received a $100 fine and a $29 assessment of court costs.  (PSR ¶ 24.)  For Count II ("Speeding (43/30 mph)"), he received a fine for $35.  (Id.)  For Count III ("No Driver's License in Possession"), he was fined $25, given a 90-day jail sentence (this was suspended so it does not count in the calculation under U.S.S.G. § 4A1.2(c) – see U.S.S.G. § 4A1.2(b)(2)), and eight months of probation.  (Id.)  The eight months of probation were as to each count, see PSR ¶ 24, but were presumably served concurrently, not consecutively.

[3]  The list of crimes in U.S.S.G. § 4A1.2(c)(1) includes: "Careless or reckless driving; Contempt of court; Disorderly conduct or disturbing the peace; Driving without a license or with a revoked or suspended license; False information to a police officer; Fish and game violations; Gambling; Hindering or
(continued...)

In United States v. Perez de Dios, 237 F.3d 1192 (10th Cir. 2001), we approved the Eighth Circuit's approach finding that "similar" should be given its "'normal' or dictionary meaning – '[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness.'" Id. at 1198; see also id. (describing an Eleventh Circuit case in which the court concluded that military AWOL was "similar" to contempt of court and hindering or failing to obey a police officer because "[t]hese offenses similarly involve a disregard for lawful authority"). We have specifically distinguished our approach from the "elements approach" employed by First, Third, and Fourth Circuits, and urged by the government in this case, which is a "slightly narrower inquiry" comparing the legal elements of prior and current offenses. Id.

There are several crimes on the list in U.S.S.G. § 4A1.2(c) that would "[n]early correspond[]; resembl[e] in many respects; [be] somewhat alike; [or] hav[e] a general likeness" to each of Mendez-Lopez's counts. The crimes similar to "Fleeing and Eluding" are "Resisting Arrest" or "Hindering or Failing to Obey

---

³(...continued)
failure to obey a police officer; Insufficient funds check; Leaving the scene of an accident; Local ordinance violations (excluding local ordinance violations that are also criminal offenses under state law); Non-support; Prostitution; Resisting arrest; [and] Trespassing."

The list of crimes in U.S.S.G. § 4A1.2(c)(2) include: "Hitchhiking; Juvenile status offenses and truancy; Loitering; Minor traffic infractions (e.g., speeding); Public intoxication; [and] Vagrancy." Sentences for crimes similar to these are never to be counted.

an Officer." U.S.S.G. § 4A1.2(c)(1). The parties suggest that the crime similar to "Speeding" is "Careless or Reckless Driving." Id. An even more fitting comparable for this crime is "Minor traffic infractions (e.g., speeding)," which is listed under the next subsection of the guideline as a conviction that should never be counted towards a defendant's criminal history score. U.S.S.G. § 4A1.2(c)(2). The crime similar to "No Driver's License in Possession" is "Driving without a License or with a revoked or suspended license." U.S.S.G. § 4A1.2(c)(1).

In light of the holding of Perez de Dios, arguments to parse the elements of crimes farther should not be entertained, and notice of the "'normal' or dictionary" resemblance between the offenses for which Mendez-Lopez was convicted and those listed in U.S.S.G. § 4A1.2(c) should prevail. Perez de Dios, 237 F.3d at 1198.

Had Mendez-Lopez's March 1996 conviction not been considered in his criminal history score, his sentencing range would have dropped from 46 - 57 months to 41 - 51 months.[4] Because application of U.S.S.G. § 4A1.2(c) would have changed Mendez-Lopez's sentencing range, the district court's failure to apply the guideline constituted plain error. Smith, 919 F.2d at 124. I therefore

---

[4] The old sentencing range was calculated with an offense level of 22 and a criminal history score of 2. After application of U.S.S.G. § 4A1.2(c), Mendez-Lopez's offense level would have remained constant, but his criminal history score would have dropped to 1.

respectfully dissent on this issue and would reverse and remand for Mendez-Lopez to be resentenced under the appropriate guideline range.