**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 24, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JULIO CESAR RODRIGUEZ,

Defendant - Appellant.

No. 05-7042

(E.D. Oklahoma)

(D.C. No. CR-04-00089-001-P)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Judge, **ANDERSON**, and **BRORBY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant-Appellant Julio Cesar Rodriguez pled guilty to one count of conspiracy to possess with intent to distribute ten kilograms of cocaine, in

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

violation of 21 U.S.C. § 846. He was sentenced to 135 months' imprisonment, followed by five years of supervised release. Rodriguez appeals, arguing that the district court erred in determining that the quantity of cocaine for sentencing purposes was ten kilograms. We affirm.

## BACKGROUND

On July 8, 2004, during the course of an investigation she was conducting, Rosa Reyes, an agent with the Oklahoma State Bureau of Narcotics and Dangerous Drugs Control, received a telephone call from defendant Rodriguez, in which he indicated he was interested in purchasing ten kilograms of cocaine "if the price was right." Tr. of Sentencing Hr'g at 6, R. Vol. 3. Rodriguez suggested they meet in person to discuss the price, so Reyes and Rodriguez agreed to meet the next day, July 9, in the parking lot of Braum's Restaurant in Ardmore, Oklahoma.

Accordingly, Rodriguez and his co-defendant, Daniel Perez Castano, met with Reyes and another agent on the 9th. Agent Reyes told Rodriguez and Castano that the regular price for a kilogram of cocaine was $17,000, but that if they bought all ten kilograms, the price would be $13,500 per kilogram. Reyes testified that Rodriguez and Castano "said that ten kilograms for them was no problem because they had a lot of black clients who rock it up [i.e., turn it into crack cocaine]." Id. at 10. She further testified that Rodriguez and Castano said

-2-

"that they were going to collect or gather up the money for the ten kilograms." Id. at 12.

During the evening of the 9th, Reyes and Rodriguez talked on the telephone. Rodriguez indicated he was only able to obtain enough money to buy four kilograms of cocaine. However, Rodriguez told Reyes that after he gave Reyes the money for the four kilograms of cocaine, he and Castano would go to Dallas, sell the cocaine, and bring back sufficient money to buy the remaining six kilograms that same day (July 10th).

On July 10, Agent Reyes and the other agent met once again with Rodriguez and Castano outside the Braum's Restaurant in Ardmore. When Reyes entered Rodriguez's car, Rodriguez handed her a sealed plastic bag which he said contained $13,500 for the purchase of one kilogram of cocaine. Rodriguez indicated Castano had the rest of the cash for the purchase of the other three kilograms.

Rodriguez and Castano were then arrested. Law enforcement authorities found $13,500 in cash in the bag Rodriguez was carrying and approximately $37,000 in the bag Castano was carrying. Additionally, authorities found a loaded 9 mm. automatic handgun on Castano.

As indicated, Rodriguez eventually pled guilty without a written plea agreement. In preparation for sentencing, the United States Probation Office prepared a presentence report ("PSR"), which recommended an advisory

sentencing range under the United States Sentencing Commission, Guidelines Manual ("USSG") (2003).[1] The PSR calculated a base offense level of thirty-two, corresponding to ten kilograms of cocaine. It then recommended a two-level increase for Rodriguez's co-defendant's (Castano's) possession of a firearm, as well as a two-level decrease for acceptance of responsibility, resulting in a total adjusted offense level of thirty-two. With a criminal history category of II, Rodriguez's advisory guideline sentencing range was 135 to 168 months. Rodriguez objected to, *inter alia*, the drug-quantity-based offense level, which the district court overruled after conducting an evidentiary hearing on the day of sentencing. Following the PSR, the district court sentenced Rodriguez to 135 months' imprisonment, followed by five years of supervised release.

On appeal, Rodriguez argues that the district court erred when it determined that the amount of cocaine involved, for purposes of calculating the base offense level for sentencing purposes under USSG §2D1.1, was ten kilograms.

## DISCUSSION

We review the legal determinations underlying the district court's sentencing decisions de novo and we review any factual findings for clear error.

---

[1] The PSR stated it was using the 2003 version of the Guidelines in arriving at a guidelines sentence. As discussed, infra, the parties argue over which version of the guidelines should be used to sentence Rodriguez.

United States v. Zunie, 444 F.3d 1230, 1236 (10th Cir. 2006). "We review a sentencing court's determination of the quantity of drugs attributable to a defendant for clear error." United States v. Lauder, 409 F.3d 1254, 1267 (10th Cir. 2005).

The guideline for a violation of 21 U.S.C. § 846 is USSG §2D1.1. Pursuant to USSG §§2D1.1(a)(3) and (c)(4), the base offense level for offenses involving at least five kilograms but less than fifteen kilograms of cocaine is 32. Thus, the PSR assigned a base offense level of 32 to the ten kilograms of cocaine Rodriguez was charged with possessing.

As indicated, the PSR stated that it was applying the 2003 version of the guidelines in calculating Rodriguez's sentence. In the 2003 version of the guidelines, Application Note 12 to §2D1.1 provided as follows:

> In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense. For example, a defendant agrees to sell 500 grams of cocaine, the transaction is completed by the delivery of the controlled substance – actually 480 grams of cocaine, and no further delivery is scheduled. In this example, the amount delivered more accurately reflects the scale of the offense. In contrast, in a reverse sting, the agreed-upon quantity of the controlled substance would more accurately reflect the scale of the offense because the amount actually delivered is controlled by the government, not by the defendant. If, however, the defendant established that he or she did not intend to provide, or was not reasonably capable of providing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of

controlled substance that the defendant established that he or she did not intend to provide or was not reasonably capable of providing.

USSG §2D1.1, comment. (n.12) (2003). The last sentence of the Application Note was the subject of much discussion and confusion, because, in context, it appeared to apply to reverse sting operations, but its language, referring only to situations where the defendant provides drugs, suggested it could not apply to reverse stings. See United States v. Smack, 347 F.3d 533, 538 (3d Cir. 2003) ("Note 12 is opaque and confusing."); United States v. Hardwell, 80 F.3d 1471, 1497 (10th Cir. 1996) ("Whether the second sentence quoted from Note 12 applies in reverse stings is unsettled.").

To clarify this confusion, Application Note 12 was amended, effective November 1, 2004, so that the last sentence now reads as follows:

> If, however, the defendant establishes that the defendant did not intend to provide or purchase, or was not reasonably capable of providing or purchasing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant established that the defendant did not intend to provide or purchase or was not reasonably capable of providing or purchasing.

USSG §2D1.1, comment. (n.12) (2004). The PSR in this case was dated November 8, 2004. When Rodriguez objected to the use of the 2003 guidelines rather than the 2004 version, the probation office responded:

> The 2004 Guidelines Manual was not published and distributed at the time the report was submitted. The 2003 edition of the guidelines has been compared to the 2004 edition and there are no Ex Post Facto issues arising from subsequent guideline amendments, which would

impact the sentencing options in this case. Therefore, the guideline computations remain the same under the 2004 edition of the <u>Guidelines Manual</u>.

Addendum to PSR, R. Vol. 4.

Rodriguez argues the 2004 version of the guidelines, including Application Note 12, should apply; under that version, the agreed-upon quantity is determinative of the base offense level; and that, in this case, four kilograms of cocaine was the agreed-upon quantity for purposes of Note 12. He further argues that there was not a sufficiently developed and/or feasible plan for him to purchase the remaining six kilograms and those kilograms should accordingly be disregarded. In the language of the 2004 version of Application Note 12, Rodriguez argues he has established that he "did not intend . . . to purchase, or was not reasonably capable of . . . purchasing" the remaining six kilos.

In rejecting this same argument, the district court found as follows:

[I]n a reverse sting, the agreed upon quantity of the controlled substance would more accurately reflect the scale of the offense because the amount actually delivered is controlled by the government, not by the defendant. In this case the defendant negotiated with government agents to purchase ten kilograms of cocaine, according to the testimony provided by Agent Reyes. The defendants purchased a reduced quantity of cocaine due to a cash problem. However, Mr. Rodriguez and Agent Reyes – Mr. Rodriguez told Agent Reyes that they could go back to Dallas, Texas, sell the cocaine and return with the proceeds to purchase an additional six kilograms of cocaine. The defendant's lack of sufficient money to complete the transaction does not limit Mr. Rodriguez's liability for the remainder of the drug quantity agreed to purchase. The defendant in this case clearly had a plan to obtain

additional funds which would have sufficiently allowed for the purchase of the additional six kilograms of cocaine.

Tr. of Sentencing Hr'g at 44, R. Vol. 3.

We agree with the district court that there was sufficient evidence supporting the conclusion that Rodriguez agreed to purchase ten kilos, and that the full amount was properly attributed to him.[2]  Indeed, Rodriguez had a specific plan to promptly convert proceeds from the sale of the four kilograms of cocaine into funds with which to buy the remaining six kilograms.  See United States v. Perez de Dios, 237 F.3d 1192, 1195 (10th Cir. 2001) ("'A drug buyer who lacks the full purchase price may nonetheless intend to obtain the negotiated quantity by force or deception, or on a credit or consignment basis.'") (quoting Hardwell, 80 F.3d at 1497).  The district court's finding that he had conspired to obtain ten kilograms was not clearly erroneous.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the sentence imposed below.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[2]We further agree with the probation office that the result would be the same under either the 2003 or the 2004 guidelines.

-8-