**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**William Barrington RAY,**
**Defendant–Appellant.**

**No. 91–2285.**

United States Court of Appeals,
Tenth Circuit.

Submitted on the Briefs.[1]

Aug. 17, 1992.

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Don J. Svet, U.S. Atty., and Louis E. Valencia, Asst. U.S. Atty., Albuquerque, N.M., for plaintiff-appellee.

John B. Leyba, Las Cruces, N.M., for defendant-appellant.

Before MOORE, TACHA, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Defendant William Barrington Ray appeals his conviction on a single count of possession with intent to distribute less than fifty kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). We affirm.

On April 7, 1991, the United States Border Patrol stopped a commercial bus at a permanent border checkpoint near Alamogordo, New Mexico. Agent Oscar Elizalde boarded the bus and announced his intention to check the citizenship and immigration status of the passengers. He began questioning passengers at the rear of the bus and worked his way forward.

Midway through the bus, Agent Elizalde encountered Mr. Ray, a passenger, standing behind him. The agent considered the event unusual and asked Mr. Ray to sit down until he completed checking the remaining passengers' immigration documents. Mr. Ray complied.

Upon routine questioning of Mr. Ray, the agent noticed two large sports bags on the overhead rack above him. The agent asked Mr. Ray whether any of the bags belonged to him. Mr. Ray identified the two sports bags as his own. The agent testified that Mr. Ray consented to a request to walk a drug-sniffing dog around the bags. Mr. Ray carried the bags outside where a trained drug dog "alerted" to the bags. A second agent felt brick-shaped objects in the bag, and a subsequent search of the bag revealed three bundles of marijuana weighing over thirty pounds.

After being advised of his rights, Mr. Ray stated that he found the marijuana in a ditch and put it in his luggage. On a later date, he stated that he had intended to turn the marijuana over to police but could find no one to take it. At trial, Mr. Ray testified he wanted to call the police but feared his fingerprints on the bundles would incriminate him. He further testified he was suffering depression and headed north on the bus to escape his problems, fully intending to turn the marijuana over to police somewhere other than Tucson where he found the drugs. The jury rejected Mr. Ray's testimony and returned a guilty verdict.

Mr. Ray claims two points of error. Though he admits possessing the marijuana, he asserts the jury had insufficient evidence to find him guilty of intending to distribute the drug. Mr. Ray also claims the trial judge erred by denying his pretrial motion to suppress evidence of the marijuana and statements he made to authorities. Mr. Ray's claims have little merit.

I

Both direct and circumstantial evidence, along with the reasonable inferences to be drawn therefrom, is sufficient to support a guilty verdict "if, when taken in the light most favorable to the government, a reasonable jury could find the defendant

guilty beyond a reasonable doubt." *United States v. Hooks*, 780 F.2d 1526, 1531 (10th Cir.), *cert. denied*, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). The record here fully supports the jury's verdict.

■ Mr. Ray possessed thirty pounds of marijuana concealed in two bags. A large quantity of drugs can be sufficient to support a finding of intent to distribute. *United States v. Caro*, 965 F.2d 1548, 1556 (10th Cir.1992) (citing *United States v. Parrish*, 925 F.2d 1293, 1297 (10th Cir. 1991)). Given that orange peels were packed with the marijuana (a method often used to mask the odor of marijuana), the drugs were valued at $24,000, Mr. Ray was aboard a bus bound for Denver, and he had not turned the drugs over to police in Tucson, ample evidence existed for the jury to conclude beyond a reasonable doubt Mr. Ray intended to distribute the drug rather than turn it over to authorities.

## II

Prior to trial, Mr. Ray moved to suppress statements he made to authorities, as well as the seized marijuana. Mr. Ray claimed he was not advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he did not knowingly waive his right to remain silent, he was arrested without probable cause and the agents' interrogation was custodial. He also claimed the border agent aboard the bus ordered rather than asked him to take his bags off the bus for inspection by a trained drug dog.

The district court denied the motion, believing the agents' version of the events over Mr. Ray's description of the incident. The district court found Mr. Ray voluntarily consented to a "walk around" of the bags by a drug dog, he was arrested after the dog "alerted" to the bags, the agents read him his *Miranda* rights, and Mr. Ray's statements were voluntary and not the result of improper police questioning.

Citing this Circuit's recent opinion in *United States v. Ward*, 961 F.2d 1526 (10th Cir.1992), Mr. Ray asserts the border patrol's bus sweep constituted an investigative detention rather than a voluntary encounter, requiring suppression of his statements and the subsequent seizure of marijuana. Mr. Ray asserts the border patrol agent had no reasonable suspicion to search his bags, and his consent was involuntarily as he felt unable to refuse. Mr. Ray's reliance on Ward is misguided.

In *Ward*, we held that statements and marijuana seized as the result of an illegal detention in a private roomette aboard a train should have been suppressed. *Id.* at 1535–36. Notably, we held that the private setting of the roomette, the presence of numerous officers in or about the roomette, the officers' incriminating questions and apparent specific targeting of the defendant created an environment in which an individual would not feel free to leave, thereby tainting the defendant's subsequent consent to search his luggage. *Id.* at 1530–36. A decisive factor in Ward was the defendant was not in a public place or in view of persons other than law enforcement personnel. *Id.* at 1531–32.

■ The coercive atmosphere created in *Ward* simply was not present at the time border patrol agents interviewed Mr. Ray. Unlike *Ward*, the stop here resulted from a routine immigration inspection conducted at a permanent border checkpoint rather than an investigatory stop based on individualized suspicion. The courts have consistently held that government officials may stop vehicles at a permanent border checkpoint for brief questioning of the driver and passengers without individualized suspicion. *United States v. Martinez–Fuerte*, 428 U.S. 543, 556–62, 96 S.Ct. 3074, 3082–85, 49 L.Ed.2d 1116 (1976). Furthermore, the vehicle and its occupants may be selectively referred to a secondary inspection area for further questioning without individualized suspicion. *Id.* at 563, 96 S.Ct. at 3085; *see also United States v. Rubio–Rivera*, 917 F.2d 1271, 1275–76 (10th Cir. 1990). Mr. Ray's encounter with the border patrol agents resulted precisely from such a border checkpoint stop. Accordingly, the agents had authority to question Mr. Ray at the checkpoint.

Also noteworthy, Mr. Ray was in a public passenger compartment aboard the bus among other individuals and was not the specific target of the border patrol's routine immigration inspection. Thus, the coercive circumstances that existed in *Ward* were not present when agents initially questioned Mr. Ray.

 Nevertheless, Mr. Ray argues he was detained for investigative purposes even though no objectively suspicious circumstances existed with regard to his conduct or luggage. This Circuit has long held that individualized suspicion is not necessary for a brief detention at a permanent border patrol checkpoint to inquire into citizenship, immigration status and suspicious circumstances. *Id.* at 1276 (citing *United States v. Espinosa*, 782 F.2d 888, 891 (10th Cir.1986)).

Agent Elizalde testified that he considered Mr. Ray's decision to leave his seat during the border check unusual because in his experience everyone normally remains seated until the citizenship check is complete. He also testified he was alerted by the unusually large amount of luggage in the overhead compartment above Mr. Ray. We agree with the district court that the agent had ample justification to question Mr. Ray about the ownership and the contents of the bags.

We are aware that further detention must result from the individual's consent, probable cause or a valid investigative detention. *United States v. Sanders*, 937 F.2d 1495, 1499 (10th Cir.1991), *cert. denied,* ––– U.S. –––, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992). Here, the district court found Mr. Ray voluntarily consented to a "walk around" search of his bags by a trained drug dog. Because testimony and evidence in the record supports the district court's findings, we cannot say its findings are clearly erroneous. *See United States v. Walker*, 933 F.2d 812, 815 (10th Cir. 1991), *cert. denied,* ––– U.S. –––, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992); *United States v. Butler*, 904 F.2d 1482, 1484 (10th Cir.1990).

Accordingly, we agree with the district court that the discovery of marijuana resulted from Mr. Ray's voluntary consent to search his luggage. Nor are we inclined to suppress statements Mr. Ray made to the agents. Evidence in the record fully supports the district court's finding that such statements were voluntary and not in response to improper police questioning.

Mr. Ray's conviction is AFFIRMED.