**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 11, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
––––––––––––––––––––––––––––

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

GRANT ANDREW STOUT,

     Defendant-Appellant.

No. 10-5153
(D.Ct. No. 4:10-CR-00050-JHP-1)
(N.D. Okla.)

–––––––––––––––––––––––––––––––

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, Circuit Judge, and **BARRETT** and **BRORBY**, Senior
Circuit Judges.

     After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

     Appellant Grant Andrew Stout appeals his conviction and sentence for

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

being a felon in possession of firearms and ammunition in violation of 18 U.S.C.

§ 922(g)(1).  Mr. Stout alleges the district court erred in denying his motion to

suppress evidence and his statements obtained in conjunction with the search of

his home, arguing the affidavit supporting the warrant failed to establish probable

cause.  He also alleges he was illegally arrested during the search and challenges

the procedural reasonableness of his sentence based on the district court's

application of the United States Sentencing Guidelines ("U.S.S.G." or

"Guidelines").  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm

Mr. Stout's conviction and sentence.


## I.  Factual Background

In disposing of Mr. Stout's appeal, we summarize the facts contained in the

record on appeal, which are also outlined in the federal magistrate judge's Report

and Recommendation adopted by the district court in its Opinion and Order.[1]

---

[1]  Neither party has provided sufficient citation to the record on appeal to support all facts on which they rely, as required under Federal Rule of Appellate Procedure 28 and Tenth Circuit Rules 28.1 and 28.2.  We remind counsel it is their responsibility to provide the applicable and correct record references in support of their briefs.  *See generally United States v. Rodriguez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997) (explaining court will not sift through the record in absence of essential references to the record in a party's brief); *United States v. Easter*, 981 F.2d 1549, 1555 n.4 (10th Cir. 1992) (stating we generally will not consider factual allegations and arguments unsupported by citation to the record).  While, in this instance, we have reviewed the record and ascertained support for such facts, counsel are strongly reminded of their responsibility to provide record references in future filings before this court and cautioned failure

(continued...)

On March 21, 2010, John Singer, a police investigator in Claremore, Oklahoma, applied for a search warrant for Mr. Stout's residence, alleging Mr. Stout was a convicted felon illegally possessing in his residence a black handgun; ammunition for the black handgun; items used in the manufacture of pipe bombs, such as metal pipes and fittings, gun powder, and fuses; and letters and mail proving residency. In his affidavit supporting the search warrant, Investigator Singer conveyed, in part, the following information:

(1) On March 20, 2010, Brandon Hash, a neighbor and relative of Mr. Stout, told Investigator Singer:

(a) He had lived next door to Mr. Stout for about a year. In September or October 2009, Mr. Stout came to Mr. Hash's house to show him his new handgun which he described as "one size bigger than a 9mm";

(b) In December 2009, they went to a rural location in Rogers County to "go shooting," where they fired several firearms. Mr. Stout brought a pipe bomb he claimed he manufactured in his home. Mr. Hash described the pipe bomb as a steel pipe with caps at both ends surrounded by nails. Mr. Stout told him he manufactured several pipe bombs using pipe, fuse, and gunpowder obtained from pawn shops. During their trip, Mr. Stout used the pipe bomb to blow up a cooler;

---

[1](...continued)
to do so will result in our declining to consider factual allegations unsupported by reference to the record.

(c) In late 2009, Mr. Stout became angry with another man and told Mr. Hash he intended to hide a pipe bomb in the man's vehicle; the same man moved out of state on learning of the threat;

(d) Mr. Hash had been inside Mr. Stout's residence several times, including three or four weeks earlier, where he observed a black handgun in the living room. Mr. Stout displayed the gun to him and said he possessed it for his own protection. Mr. Hash said Mr. Stout kept the gun concealed in the cushions of the living room couch, and on numerous occasions Mr. Stout talked about having other firearms in his home, including a .22 pistol and long guns;

(e) Mr. Stout was angry at Tim Wantland, a Rogers County assistant district attorney, over several cases, including Mr. Wantland's prior representation of Mr. Stout in a criminal prosecution when he was a defense attorney and currently over Mr. Wantland's prosecution, as an assistant district attorney, against Mr. Stout for a driving under the influence (DUI) offense; and

(f) Mr. Stout was aware Mr. Hash and Mr. Wantland knew each other, and on March 20, 2010, Mr. Stout called Mr. Hash and threatened him and Mr. Wantland by saying if Mr. Wantland did not "get him off" on his pending DUI case, he would "get" both Mr. Wantland and Mr. Hash.

(2) After receiving this information, Inspector Singer obtained Mr. Hash's consent to record a telephone call between Mr. Hash and Mr. Stout; during their conversation, Inspector Singer heard Mr. Stout get angry, speak irrationally, and

-4-

hang up. In a subsequent call, Mr. Stout told Mr. Hash they would meet face-to-face and then hung up again.

(3) The next day, Inspector Singer spoke to Tim Wantland, who confirmed he had been professionally involved with Mr. Stout and explained Mr. Stout approached him at Mr. Hash's wedding several months earlier angry over something, causing Mr. Wantland to leave the wedding.

(4) Two named Claremore police officers, including Officer Steve Cox, advised Inspector Singer they knew Mr. Stout in middle school and high school, and during that time he fired shots into the home of one of his teachers, after which he was detained and prosecuted through the juvenile legal system in Rogers County.

(5) Investigator Singer examined court records and online Oklahoma Department of Corrections records and confirmed "Grant *Scott*" was convicted of the felony crimes of possession of a controlled substance and eluding a police officer, for which he received a suspended sentence of more than one year.

On the basis of the information in the affidavit, a local judge issued a "no-knock" search warrant for Mr. Stout's residence. On the evening of March 21, 2010, Inspector Singer, together with Claremore police officers, an agent with the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and members of the Northeast Oklahoma Violent Crimes Task Force, executed the

-5-

search warrant on Mr. Stout's residence. Officers surrounded Mr. Stout's home and then contacted his father by telephone, asking him to contact Mr. Stout and convince him to come out. Shortly thereafter, Mr. Stout came out of his home, at which time several officers pointed their weapons at him and ordered him to walk toward them and get on his knees. Officials then handcuffed him and Officer Cox placed him in a police vehicle. Inspector Singer and Officer Cox later testified the reason they placed Mr. Stout in handcuffs and put him in a police vehicle was for the safety of both the officers and Mr. Stout because the search was for firearms and potential explosives.

After entering the vehicle, Officer Cox read Mr. Stout his *Miranda* rights and Mr. Stout stated he understood his rights. Mr. Stout then spontaneously asked why officers were at his residence and whether it concerned his cousin, Mr. Hash, and Mr. Wantland. Officer Cox then asked him if any firearms were inside the house, to which Mr. Stout answered "no."[2] When asked why law enforcement

---

[2] The only questions Officer Cox asked Mr. Stout before reading him his *Miranda* rights were: (1) whether he had graduated from high school and could read and write, to which Mr. Stout answered affirmatively; and (2) if he was under the influence of any intoxicants, alcohol, or drugs, to which Mr. Stout said "no." Officer Cox testified he asked those questions to ensure Mr. Stout could understand his rights and voluntarily waive them. Thus, it is clear from the record and circumstances presented Officer Cox asked those questions merely for the purpose of determining Mr. Stout's ability to understand his *Miranda* rights and not for the purpose of eliciting any incriminating statements. *See Pennsylvania v. Muniz*, 496 U.S. 582, 602 n.14 (1990).

had heard about pipe bombs in the residence, Mr. Stout stated he did not know why anyone would say he had pipe bombs.

During this time, law enforcement conducted the residence search and found loaded firearms and numerous rounds of varying calibers of ammunition; used and unused paper shooting targets; and items commonly used to make pipe bombs, including steel pipe, gun powder, and fuse material. On learning of the articles found in Mr. Stout's residence, Officer Cox told Mr. Stout firearms had been found, and Mr. Stout stated they belonged to his wife. Mr. Stout also denied any knowledge of ammunition found in his residence.

Officer Cox then began transporting Mr. Stout to the Claremore Police Department for further questioning. During the drive, Officer Cox continued to question Mr. Stout about the firearms, ammunition, and black gun powder found in his residence, and Mr. Stout generally denied possessing such items, other than stating his wife obtained the firearms from someone named "Duron" who owed Mr. Stout money and gave him the firearms as payment.

When they arrived at the Claremore police station, Officer Cox and ATF Special Agent Josh Petree continued to interview Mr. Stout; when Agent Petree asked if he wanted to talk to an attorney, Mr. Stout said he would talk to them

instead. During their interview, Mr. Stout made various incriminating admissions concerning the firearms, ammunition, and black gun power found in his residence. After admitting he wrote the bullet type and distance on targets found in his house, Mr. Stout asked for an attorney and the questioning stopped.

## II. Procedural Background

On April 6, 2010, a federal grand jury indicted Mr. Stout for being a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1). Thereafter, Mr. Stout moved to suppress the inculpatory evidence found in his residence and all of his statements to police, claiming the search of his home and his "arrest" violated the Fourth Amendment of the Constitution. Specifically, he argued the search warrant was invalid because: (1) the affidavit supporting it failed to contain evidence on the reliability of the information obtained from the informant, Mr. Hash; (2) it contained erroneous information about the criminal background of a "Grant Scott," not "Grant Stout," and therefore, lacked evidence he had prior felony convictions for eluding police or possession of a controlled drug; and (3) it contained stale and nonspecific information concerning his possession of firearms. He also argued authorities illegally arrested him, rather than lawfully detained him, when they immediately handcuffed him and he was not free to leave, and therefore, his statements should be suppressed.

A federal magistrate judge held an evidentiary hearing on Mr. Stout's motion to suppress, during which Investigator Singer and Officer Cox testified. In so doing, Investigator Singer clarified his use of the name "Grant Scott" in the affidavit was accidental as was identifying Mr. Stout's misdemeanor drug conviction as a felony. In turn, Officer Cox confirmed that prior to his and Investigator Singer's interview of Mr. Hash, Mr. Hash voluntarily came to the police station to report Mr. Stout's possession of firearms and ammunition. Officer Cox also explained the information he gave Inspector Singer about Mr. Stout shooting a firearm at the home of a teacher in the Claremore public school system was generally known by him and other students at the school, even though he did not witness the shooting first-hand.

Following the hearing, the federal magistrate issued a lengthy Report and Recommendation, recommending the district court deny Mr. Stout's motion to suppress the evidence obtained during the search of his residence and his statements. In addressing Mr. Stout's contentions, the federal magistrate determined the reliability of Mr. Hash's informant information was established, in part, by the fact Mr. Hash voluntarily came to meet with the police, was related to Mr. Stout, had recently been in Mr. Stout's home, and was a named informant in the affidavit. Relying on *United States v. Brown*, 496 F.3d 1070, 1075 (10th Cir. 2007), the federal magistrate explained a lesser degree of corroboration of an

informant's information is required when an informant is named in an affidavit than if the informant is confidential. The federal magistrate also noted Officer Cox corroborated Mr. Hash's information Mr. Stout previously possessed firearms when he recalled Mr. Stout firing shots into a teacher's home, and Inspector Singer corroborated Mr. Hash's statements on Mr. Stout's animus against him and Mr. Wantland when he both interviewed Mr. Wantland and heard the heated telephone exchanges between Mr. Hash and Mr. Stout. Under the totality of the circumstances, the federal magistrate found Mr. Hash's information sufficiently reliable for the purpose of issuing the search warrant.

As to Mr. Stout's prior criminal convictions outlined in the affidavit, the federal magistrate agreed the affidavit inaccurately stated "Grant Scott" was convicted of the felony crimes of possession of controlled substances and eluding a police officer but noted Investigator Singer testified "Scott" was a typographical error and clarified he checked Mr. Stout's criminal record, not "Grant Scott's" record. The federal magistrate found that other than the mistaken reference to "Grant Scott," the rest of the affidavit dealt with Mr. Stout and his activities, thereby eliminating any confusion over who had the convictions identified therein.

While the affidavit inaccurately stated "Mr. Scott" possessed a prior

"felony" conviction for possession of a controlled substance, rather than a "misdemeanor" conviction, the federal magistrate explained Investigator Singer testified the misunderstanding and inaccuracy in the affidavit resulted from the fact the Oklahoma Department of Corrections, which reported the conviction, usually does not report misdemeanors. After noting Investigator Singer testified these inaccuracies were unintentional and simply mistakes, the federal magistrate found they were not intentionally or recklessly made in disregard of the truth. The federal magistrate also explained that even if Mr. Stout did not have a felony conviction for possession of a controlled drug, he possessed a felony conviction for eluding a police officer for the purpose of issuance of the search warrant. Alternatively, even if the affidavit did not accurately disclose Mr. Stout was a felon, the federal magistrate found it contained probable cause for issuance of a warrant under 21 Okla. St. § 1767.1(4)[3] because it contained information on Mr. Stout's willful manufacture of an explosive device or bomb with knowledge or intent it would be used to kill, injure, or intimidate, which is a felony crime warranting issuance of a search warrant. For these reasons, the federal magistrate held Investigator Singer's testimony was credible and the warrant valid.

The federal magistrate also rejected Mr. Stout's claim on the staleness of

---

[3] The federal magistrate mistakenly referred to this section as § 1767.11(4).

the information in the affidavit regarding his possession of firearms at his residence. In so doing, he explained the question of whether information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized, but that mere passage of time in this case was not of critical importance because federal firearms violations are considered to be continuing offenses. He then pointed out the affidavit established Mr. Stout's conduct was "continuing" because it contained information his possession of firearms and activities in bomb making began months ago and continued up to at least three to four weeks before issuance of the warrant. In view of Mr. Stout's threats outlined in the affidavit and his statement he kept a gun for protection, the federal magistrate also found the affidavit gave the issuing judge probable cause to believe Mr. Stout still possessed firearms, in spite of the passage of time. As a result, the federal magistrate found the affidavit established a substantial basis for the issuing judge to conclude a fair probability existed that evidence of a crime would be found at Mr. Stout's residence and, therefore, probable cause existed to issue the search warrant.

Even if the affidavit did not provide sufficiently accurate information to establish probable cause, the magistrate judge relied on the premise in *United States v. Leon*, 468 U.S. 897 (1984), to hold the "good faith" exception applied to

the search, explaining evidence obtained pursuant to a warrant should be suppressed only in the unusual case when exclusion of evidence will deter police misconduct. *See United States v. Tuter*, 240 F.3d 1292, 1298-99 (10th Cir. 2001) (quoting *Leon*, 468 U.S. at 916, 918). The federal magistrate then determined the evidence adduced at the hearing demonstrated Investigator Singer acted in good faith in obtaining the warrant and the affidavit was not so lacking in indicia of probable cause to render his belief in the validity of the warrant unreasonable.

The federal magistrate also rejected Mr. Stout's claim all his statements should be suppressed as a tainted product of an illegal arrest when officers immediately handcuffed him at gunpoint even though, as Mr. Stout alleged, he had not committed a crime in the officers' presence and they had no reason to believe he had committed a crime. Relying on *Michigan v. Summers*, 452 U.S. 692, 702-03, 705 (1981), the magistrate judge explained a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted, and such a detention is proper to minimize the risk of harm to the police and the occupants. He concluded the officers detained Mr. Stout while they conducted a search of his residence pursuant to the search warrant, it was reasonable under the circumstances for the officers to handcuff him and display their weapons for both their and Mr. Stout's protection, and officers read Mr.

Stout the *Miranda* warning before any arguably incriminating statements were made. As a result, the federal magistrate determined Mr. Stout's detention while officers searched his residence was proper and no basis existed to suppress his statements to police. Based on these findings and holdings, the federal magistrate recommended the district court deny Mr. Stout's motion to suppress.

Mr. Stout filed objections to the magistrate judge's Report and Recommendation, which the district court addressed and rejected in its Order and Opinion; in so doing, the district court adopted the Report and Recommendation and denied Mr. Stout's motion to suppress. Mr. Stout then entered into a conditional plea agreement, pleading guilty to one count for possessing firearms and ammunition after a felony conviction in violation of 18 U.S.C. § 922(g)(1) but reserving his right to appeal the district court's denial of his motion to suppress. Thereafter, the district court imposed a within-Guidelines sentence of thirty-two months imprisonment.

### III. Discussion

Mr. Stout now appeals the district court's denial of his motion to suppress evidence, raising the same issues on the sufficiency of the affidavit supporting the search warrant and the illegality of his detention, which he suggests was a formal arrest without probable cause. Concerning the search, Mr. Stout continues to

argue the affidavit in support of the search warrant was based on stale information

from Mr. Hash which lacked evidence or corroborating evidence demonstrating

the reliability, credibility, or veracity of his statements.[4]  Mr. Stout also continues

to claim officers illegally arrested him without a warrant when they pointed their

guns at him, handcuffed him, and placed him in a law enforcement vehicle and,

therefore, his statements must be withheld.  Finally, with respect to his sentence,

Mr. Stout argues the district court erred in applying certain Guidelines in

calculating his sentence, thereby making his sentence procedurally unreasonable.


A.  Search Warrant

In addressing Mr. Stout's contention the search warrant lacked probable

cause, we consider our standard of review:

> When reviewing a district court's denial of a motion to suppress, this
> court accepts the district court's factual findings unless they are

---

[4]  Mr. Stout no longer raises an argument regarding the inaccuracies in the search warrant concerning the use of the name "Grant Scott" or identifying his drug conviction as a felony rather than a misdemeanor. We arrive at this conclusion because the only references Mr. Stout makes to such inaccuracies are in his "Statement of the Case" and "Statement of the Facts" contained in his appeal brief, and he otherwise provides no argument or citation to any authority for the purpose of appealing the validity of the search warrant based on such inaccuracies.  Even if Mr. Stout intended to raise an issue with regard to these inaccuracies, we have held perfunctory or cursory reference to issues unaccompanied by some effort at developed argument is inadequate to warrant consideration, *see United States v. Almaraz*, 306 F.3d 1031, 1041 (10th Cir. 2002), and, generally, we will not address issues unsupported by citation to legal authority, *see MacArthur v. San Juan County*, 495 F.3d 1157, 1160-61 (10th Cir. 2007).

> clearly erroneous, viewing the evidence in the light most favorable to the government. However, the ultimate determination of reasonableness under the Fourth Amendment is a question of law and is reviewed de novo under the totality of the circumstances.

*United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001). However, our review of the probable cause ruling by the judge issuing the search warrant is more deferential. *See United States v. Biglow*, 562 F.3d 1272, 1282 (10th Cir. 2009). We generally "give considerable deference to [an issuing judge's] determination of probable cause; a reviewing court's only duty is to ensure that the [judge] had a substantial basis for concluding that probable cause existed." *United States v. Mathis*, 357 F.3d 1200, 1205 (10th Cir. 2004) (quotation marks omitted).

As to the applicable legal principles, probable cause is necessary for issuance of a search warrant, as supported by an oath or affirmation. *See id.* at 1203. We review the sufficiency of an affidavit on which a warrant is issued by looking at the totality of the circumstances and ensuring the issuing judge had a substantial basis for concluding probable cause existed. *See Basham*, 268 F.3d at 1203. "Probable cause to issue a search warrant exists only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* However, we do not require "hard evidence or personal knowledge of

illegal activity [to] link a Defendant's suspected unlawful activity to his home."
*Biglow*, 562 F.3d at 1279 (quotation marks omitted). Instead, "a sufficient nexus is established once an affidavit describes circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place." *Id.* (quotation marks omitted).

As a result, "judges may rely on the opinion of law enforcement officers as to where contraband or other evidence may be kept" as well as inferences reasonably drawn from the evidence connecting a defendant's suspected activity to his residence. *Id.* at 1279-80. Judges may also rely on hearsay evidence which "may form the basis for a probable cause determination" as well as information received through an informant, "so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *Mathis*, 357 F.3d at 1204-05 (quotation marks omitted). However, as both the federal magistrate and district court in this case explained, a lesser degree of corroboration of an informant's information is required when, as here, the informant is named in an affidavit, rather than if the informant is a confidential informant. *See Brown*, 496 F.3d at 1075.

In applying our standard of review and legal principles, we conclude neither the magistrate judge nor the district court committed any error in

determining Mr. Stout's motion to suppress should be denied. Giving the

appropriate deference to the issuing judge's determination of probable cause, it is

clear the supporting affidavit provided a substantial basis for concluding probable

cause existed for issuance of a search warrant. In other words, a reading of the

affidavit would lead a prudent person to believe a fair probability existed

contraband or evidence of a crime would be found in Mr. Stout's residence or a

sufficient nexus existed which would warrant a person of reasonable caution to

believe the articles sought were at that residence.[5] As to the issues on the

reliability, credibility, and veracity of the information provided by Mr. Hash;

corroboration and staleness of such information; and the credibility of Inspector

Singer, those issues are fully addressed in the district court's Order and Opinion,

which adopted the federal magistrate's Report and Recommendation. We

conclude, for substantially the same reasons contained therein, that the search

warrant was supported by probable cause.


B. Detainment

Having determined the search warrant was supported by probable cause, we

_____

[5] Based on the issues presented on appeal as well as the totality of the circumstances, probable cause existed for issuance of the search warrant. Therefore, we need not alternatively address the *Leon* good-faith doctrine, other than to agree with the district court the officers executing the search warrant had an objective good-faith belief the warrant was properly executed by a neutral magistrate. *See United States v. Campbell*, 603 F.3d 1218, 1225-26 (10th Cir.), *cert. denied*, 131 S. Ct. 351 (2010).

address Mr. Stout's contention the district court erred in denying his motion to suppress his statements. In appealing the district court's denial, Mr. Stout contends officers violated his Fourth Amendment right against seizure when they arrested him without an arrest warrant by pointing guns at him as he voluntarily exited the house, making him kneel on the ground, handcuffing him, and placing him in a patrol vehicle while they searched his residence, even though, as he alleges, nothing established he had committed or was committing a crime at that time.

Our standard of review on this issue is the same as previously set forth in our discussion of the validity of the search warrant. *See Basham*, 268 F.3d at 1203. Applying our standard of review, we reject Mr. Stout's argument for the reasons discussed hereafter, as well as those contained in the district court's Order and Opinion and the federal magistrate's Report and Recommendation.

As the district court and federal magistrate explained, a search warrant for contraband founded on probable cause gives "the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant" and otherwise "implicitly carries with it the limited authority to *detain* the occupants of the premises *while a proper search is conducted*." *Summers*, 452 U.S. at 704-05 (emphasis added). Since *Summers*, the

Supreme Court, in *Muehler v. Mena*, 544 U.S. 93 (2005), has extended this holding, stating, "police officers have a 'categorical' authority to *detain* persons found on premises subject to a lawful search warrant for 'contraband' materials, incidental to the officers' execution of the warrant." *See Denver Justice & Peace Comm. v. City of Golden*, 405 F.3d 923, 929 (10th Cir. 2005) (relying on *Muehler*, 544 U.S. at 98). "*Summers* makes clear that when a neutral magistrate has determined police have probable cause to believe contraband exists, the connection of an occupant to a home alone justifies a detention of that occupant." *Muehler,* 544 U.S. at 99 n.2 (quotation marks omitted).

Applying *Summers* and *Muehler* to the case at hand, it is plain the search warrant in this case carried with it the authority to detain Mr. Stout as an occupant during the search of the house, and the fact he was not observed committing a crime at the time did not prevent authorities from detaining him. *See United States v. Ritchie,* 35 F.3d 1477, 1483 (10th Cir. 1994). For this reason, the fact Mr. Stout was not allowed to leave does not make it an illegal arrest. We also reject Mr. Stout's contention his handcuffing by authorities while they detained him constituted an illegal arrest. Where a search warrant authorizes a search for weapons, an "inherently dangerous situation" arises which extends the governmental interest "in not only detaining but using handcuffs" during the detention. *Muehler,* 544 U.S. at 99-100 & n.2. In this case, Mr. Stout left a

house subject to a search warrant for firearms, ammunition, and explosives, so his handcuffed detention was justified by a substantial governmental interest in minimizing the risk of harm to authorities who reasonably believed he might present some danger to the officers during the course of the entire search. Similarly, officers had the authority to order Mr. Stout to kneel or get down prior to handcuffing him because "[s]uch an order is a reasonable means of effecting *Summer's* aims of preventing flight and minimizing the risk of harm by the 'officers routinely exercising unquestioned command of the situation.'" *United States v. Sanchez*, 555 F.3d 910, 919 (10th Cir. 2009) (quoting *Summers*, 452 U.S. at 703) (holding order for suspect to get down was reasonable). For these reasons, Mr. Stout was not illegally arrested or detained when officers pointed their guns at him, told him to kneel, and handcuffed him.

Turning to Mr. Stout's detention in the law enforcement vehicle where he made statements to Officer Cox, "[i]t is well established that police officers are not required to administer *Miranda* warnings to everyone whom they question." *United States v. Eckhart*, 569 F.3d 1263, 1275 (10th Cir. 2009) (quotation marks omitted). "Instead, the protections set out by the Supreme Court in *Miranda* only apply when an individual is subject to custodial interrogation." *Id.* (quotation marks omitted).

In this case, even if Mr. Stout's initial placement in the vehicle rose to a custodial interrogation, Mr. Stout's Constitutional rights were not violated because Officer Cox administered his *Miranda* rights before asking any incriminating questions, including his initial two questions as to whether any firearms were inside the house and concerning law enforcement hearing about pipe bombs in the residence, which he asked as officers began to enter a residence where such dangerous criminal activity was suspected.[6]  In turn, Mr. Stout intelligently waived those rights before providing any inculpatory answers, and therefore, Officer Cox did not violate his Constitutional rights.  *See Davis v. United States*, 512 U.S. 452, 457-58 (1994).  Moreover, once officers finished the search and found firearms, ammunition, and bomb-making materials in Mr. Stout's residence, law enforcement had probable cause to continue to detain him and question him.  *See United States v. Ray*, 973 F.2d 840, 843 (1992).  As a result, no Fourth or Fifth Amendment violations occurred and the district court did not err in dismissing Mr. Stout's motion to suppress his statements on those grounds.

---

[6]  Because Officer Cox read Mr. Stout his *Miranda* rights before asking these initial questions, we need not address whether to apply the narrow exception outlined in *New York v. Quarles*, 467 U.S. 649, 659 n.8 (1984).  Under *Quarles*, a police officer may question a suspect in custody before giving a *Miranda* warning "without running afoul of the Constitution" if the questions arise out of "an objectively reasonable need to protect the police or the public from any immediate danger."  *United States v. DeJear*, 552 F.3d 1196, 1199 (10th Cir. 2009) (quotation marks omitted).

C.  Sentencing

After the district court accepted Mr. Stout's guilty plea, a probation officer prepared a presentence report, calculating his sentence under the applicable 2009 Guidelines.  The probation officer set Mr. Stout's base offense level at 20, pursuant to U.S.S.G. § 2K2.1, for possession of firearms and ammunition by a felon previously convicted of a crime of violence in eluding or attempting to elude a police officer.  The probation officer also recommended a three-level offense reduction for acceptance of responsibility, for a total offense level of 17.  A total offense level of 17, together with Mr. Stout's criminal history category of III, resulted in a recommended Guidelines range of thirty to thirty-seven months imprisonment.  The probation officer also found no factors warranting a departure from the Guidelines calculations or a variance under 18 U.S.C. § 3553(a).

Mr. Stout filed formal objections to the presentence report and presented argument at his sentencing hearing, claiming:  (1) the base offense level of 20 was incorrect because the felony charge of eluding or attempting to elude a police officer did not involve a crime of violence because nothing showed he used or attempted to use force; and (2) his criminal history score impermissibly included points for his misdemeanor convictions for driving under suspension and transporting an open container, as well as his second conviction for eluding a police officer, which, in that instance, was a misdemeanor, rather than a felony

offense.[7]  Based on these alleged errors and a request for a downward "departure" under 18 U.S.C. § 3553(a), Mr. Stout argued for a below-Guidelines-range-sentence.[8]

Relying on *United States v. McConnell*, 605 F.3d 822 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 3021 (2011), the district court determined a felony conviction for eluding or attempting to elude a police officer under 21 Okla. St. § 540A(B), for which Mr. Stout was previously convicted, is a crime of violence, as defined under U.S.S.G. § 4B1.2(a), because it involves conduct presenting a serious potential risk of physical injury to another.  With respect to Mr. Stout's criminal history score, the district court agreed his conviction for driving under suspension was uncountable under U.S.S.G. § 4A1.2(c) but explained Mr. Stout's misdemeanor conviction for attempting to elude a police officer was countable under § 4A1.2(c) because it requires the use of a motor vehicle and the willful

---

[7]  During the sentencing hearing, it appears Mr. Stout withdrew his objection to inclusion of his conviction for harassment based on race in calculating his criminal history, and he does not raise it on appeal.

[8]  Mr. Stout requested a downward "departure" under 18 U.S.C. § 3553(a) based on the over-representation of his criminal history, family circumstances, and employment history, as well as his contention a felon in possession of a firearm is not sufficiently serious to warrant a lengthy sentence.  However, because Mr. Stout no longer raises the district court's denial of his request for a downward departure on appeal, we need not address it, other than to explain a request for a sentence reduction under the § 3553(a) sentencing factors is a request for a "variance," not a "departure."

-24-

intent to increase the speed of the vehicle or extinguish the lights of the vehicle in an attempt to elude an officer. Similarly, the district court found Mr. Stout's conviction for transporting an open container countable under U.S.S.G. § 4A1.1(c) in calculating his criminal history score. As a result, the district court concluded the Guidelines range to be thirty to thirty-seven months imprisonment and that a sentence in the middle of the Guidelines range, at thirty-two months imprisonment, would serve the sentencing factors in 18 U.S.C. § 3553(a) as well as provide Mr. Stout sufficient time to avail himself of the 500-hour comprehensive drug treatment program.

On appeal, Mr. Stout contests the district court's calculation of his Guidelines range, renewing his arguments his felony conviction for eluding the police is not a crime of violence. "Whether a prior conviction qualifies as a 'crime of violence' under the Guidelines is a legal question that we examine de novo." *See McConnell*, 605 F.3d at 824. "In determining whether a conviction qualifies as a 'crime of violence' under § 4B.12, we apply a categorical approach that looks to the words of the statute and judicial interpretations of it, rather than the conduct of any particular defendant convicted of that crime." *Id.* at 825 (quotation marks omitted). However, "[i]f the statute encompasses both conduct that would qualify as a crime of violence and conduct that would not, we employ a modified categorical approach" by examining "the statutory elements, the

-25-

defendant's charging documents, plea agreement and colloquy (if any), and the uncontested facts found by the district judge to determine whether the particular defendant's conduct violated the portion of the statute that is a crime of violence." *Id.* (quotation marks omitted).

In *McConnell*, we applied a modified categorical approach in determining a defendant's prior conviction of fleeing and eluding a police officer under a Kansas statute constituted a crime of violence and, in so doing, looked at state court information on the crime committed to determine what part of the Kansas statute was charged against the defendant to determine whether the offense presented a serious potential risk of physical injury to another and if it was similar, in kind as well as the degree of risk posed, to the enumerated crimes in § 4B1.2(a)(2) as "crimes of violence." *Id.* at 824-30. We also discussed our holding in *United States v. West*, 550 F.3d 952 (10th Cir. 2008), that "prior convictions for eluding and evading police, at least when they involve a vehicle, should ... categorically be deemed to present a serious potential risk of physical injury to another." *Id.* at 828 (quotation marks omitted). While *West* dealt with whether eluding and evading police was a "crime of violence" for the purposes of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B), we determined the definition of a "crime of violence" in U.S.S.G. § 4B1.2(a) was almost identical to the ACCA definition and that the holding in *West* was

-26-

controlling.  *Id.* at 827-30.  Since our decisions in *McConnell* and *West*, the Supreme Court has categorically determined a defendant's intentional vehicular flight from an officer's command to stop is a "violent felony" under the ACCA because such vehicular flight "presents a serious potential risk of physical injury to another."  *Sykes v. United States*, ___ U.S. ___, 131 S. Ct. 2267, 2273 (2011).

In this case, 21 Okla. St. § 540A(A) & (B), under which Mr. Stout was previously convicted, states, in part, "any operator of a motor vehicle who has received a visual and audible signal, a red light and a siren from a peace officer ... directing the operator to bring the vehicle to a stop and who willfully increases the speed ... of the vehicle" (§ 540A(A)), and does so "*in such manner as to endanger any other person*" (§ 540A(B)), is guilty of a felony punishable by imprisonment of not less than one year.  Under these provision alone, it is clear Mr. Stout's offense in operating his vehicle "in such a manner as to endanger any other person" presents "a serious potential risk of physical injury to another" which is "similar, in kind as well as degree of risk posed, to the enumerated crimes in § 4B1.2(a)(2) as crimes of violence."  *McConnell*, 605 F.3d at 826-27 (quotation marks omitted).  This conclusion is supported by *Sykes* and our prior precedent holding a conviction for eluding a police officer while one is operating a vehicle constitutes a "crime of violence."  For these reasons, the district court did not err in concluding Mr. Stout previously was convicted of a crime of

violence for the purpose of assessing his base offense level at 20.

On appeal, Mr. Stout also contends his criminal history score impermissibly included points for his misdemeanor conviction for eluding a police officer because it is similar to offenses excluded in such calculations as listed in U.S.S.G. § 4A1.2(c)(1), such as hindering or failure to obey a police officer, careless or reckless driving, and leaving the scene of an accident and resisting arrest.[9]  However, in *United States v. Mendez-Lopez*, 338 F.3d 1153 (10th Cir. 2003), we explained an eluding and evading conviction is not similar to these excludable convictions because committing the offense of eluding and evading involves a motor vehicle, which "inherently increases the potential threat to public safety." *Id.* at 1160-61.  Based on such precedent, the district court did not err in assessing a criminal history point for Mr. Stout's misdemeanor conviction for eluding and evading a police officer.

_____

[9]  Mr. Stout now appeals the inclusion of one criminal history point for his conviction for driving under suspension, but, as previously explained, the district court sustained his objection at the sentencing hearing.  As a result, it did not include a criminal history point for that conviction in calculating his criminal history category.  However, his criminal history category remained at III based on his remaining four criminal history points, resulting in the same thirty- to thirty-seven-month Guidelines range originally calculated in the presentence report.  *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table).

IV.  Conclusion

For the reasons contained herein, we **AFFIRM** Mr. Stout's conviction and sentence.


**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge